UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JULIUS ISAAC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-01253 |
| | § | |
| PRECISION DRILLING COMPANY, LP, | § | |
| *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

This is an employment discrimination and harassment case. Plaintiff Julius Isaac alleges that his former employer, Precision Drilling, discriminated against him on the basis of his race and color, subjecting him to a racially hostile work environment that culminated in being demoted and constructively discharged. Plaintiff's three claims are: (1) race/color discrimination, (2) hostile work environment, and (3) constructive discharge.

I.   **BACKGROUND**

On or around December 4, 2010, Plaintiff Julius Isaac ("Mr. Isaac" or "Plaintiff") began work with Defendants Precision Drilling Company, L.P., Precision Drilling (US) Corporation, Precision Drilling (US) Corporation d/b/a Precision Drilling Oilfield Services Corporation, and Precision Drilling Oilfield Services, Inc. (collectively, "Defendants") as a Floorhand. He started at Rig 555, near San Antonio. Mr. Isaac alleges that, since the beginning of his employment, he experienced frequent racial harassment. He claims that, while working at Rig 555, his co-workers called him "pincho negro," which translates to "fucking black." He also alleges that his co-workers would sarcastically cheer when a Black deliveryman would come to the rig, telling Mr. Isaac that the (stranger) deliveryman was his "brother."

1

On or around June 25, 2011, Mr. Isaac was transferred to Rig 305 in Midland, Texas. Mr. Isaac reports that the same kind of race-related taunting continued there.

On or around April 12, 2012, in response to Mr. Isaac's request and application, Defendants promoted Mr. Isaac to the Health Safety and Environment Advisor ("HSE Advisor") position and assigned him to work in Alice, Texas. HSE Manager Dionicio Arredondo ("Mr. Arredondo") supervised Mr. Isaac for the remainder of his employment. As HSE Advisor, Mr. Isaac was responsible for assisting with safety, training, and accident prevention.

On or around July 12, 2012, Mr. Isaac was transferred to Defendants' Crosby, Texas location. During his time at Crosby, Mr. Isaac also supported the Tech Center in Houston. Mr. Isaac alleges that he experienced a racially hostile work environment both at Crosby and at the Houston Tech Center. He states that his co-workers called him a "nigger" between 5-15 times per week for three straight months and that they spit in his path with the same frequency. Mr. Isaac reports that an Operations Manager at the Houston Tech Center called Mr. Isaac a "gorilla" on multiple occasions and told Mr. Isaac that he "had better not make a baby with [another Black employee] because the baby will come out like a gorilla." Mr. Isaac claims that he wrote up these incidents every day in his Dispatch Orders, which are reports on which employees were instructed to recount what went on at work that day including, for example, a safety meeting or any kind of incident. Upon completion, Mr. Isaac would send his Dispatch Orders to Mr. Arredondo. Two other managers also reviewed the Dispatch Orders.

To supplement his harassment claim, Plaintiff presents deposition testimony from two other African-American former employees, Monica Carouthers and Carlotta Bennett. Carouthers and Bennett testify about a racially offensive culture at Precision, citing statements made by supervisors and co-workers such as "Black people cannot function in the cold," "Hell will freeze

over before they elect a Black Pope," and "Where is that African Congo monkey?"

On or around August 3, 2013, Defendants allege that Mr. Isaac failed to timely notify his supervisor about an injured employee, in violation of company policy. Three days later, Mr. Isaac received a written warning for this conduct. Around this time, Vice President of Global HSE Mike Adkins ("Mr. Adkins") claims that he noticed Mr. Isaac was "not meeting overall expectations with respect to his safety and injury prevention duties."

On or around August 22, 2013, Mr. Adkins and three other managers, along with Mr. Isaac, participated in an Accountability Review Board ("ARB") meeting to review the August 3 incident. After this meeting, manager Steve Folk ("Mr. Folk") arrived and requested to speak privately with Mr. Adkins and the other managers, without Mr. Isaac present. Following this post-ARB meeting, Mr. Adkins made the decision to transfer Mr. Isaac from his HSE Advisor role back to the Floorhand position. Consequently, Mr. Isaac voluntarily resigned his employment.

## II.   LEGAL STANDARD

### a. Summary Judgment

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court can consider any evidence in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255. The party

moving for summary judgment bears the burden of demonstrating the absence of a genuine dispute of material fact. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001).

## III. ANALYSIS

### a. Race/Color Discrimination

Because Plaintiff concedes that there is no direct evidence that Isaac was demoted on the basis of his race, this case falls under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The Fifth Circuit has articulated the test thus:

> *McDonnell Douglas* instructs that the plaintiff must first establish a prima facie case of discrimination . . . . Once the plaintiff presents a prima facie case, the defendant must then articulate a legitimate, nondiscriminatory reason for the questioned employment action . . . . If the defendant is able to do so, the burden shifts back to the plaintiff to produce evidence that the defendant's articulated reason is merely a pretext for discrimination.

*Frank v. Xerox Co.*, 347 F.3d 130, 137 (5th Cir. 2003).

To establish a prima facie case of discrimination, a plaintiff must show: (1) that he was a member of a protected class; (2) that he was qualified for the position; (3) that he was subject to an adverse employment action; and (4) that after he was discharged, he was replaced with a person who is not a member of the protected class or, in the case of disparate treatment, shows "that others similarly situated were treated more favorably." *Okoye v.Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

Defendants argue that Plaintiff cannot establish a *prima facie* case of discrimination because similarly situated employees were not treated more favorably and/or Plaintiff was not replaced by a non-protected person. Assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of discrimination, Defendants argue that they demoted Plaintiff for the legitimate, nondiscriminatory reason that he displayed poor case management as an HSE Advisor.

4

Plaintiff argues that he has met his light burden of showing a *prima facie* case of discrimination, the adverse employment action being Mr. Isaac's demotion from HSE Advisor to Floorhand. Plaintiff maintains that Defendants have failed to meet their burden of articulating a legitimate, non-discriminatory reason for demoting Plaintiff. Assuming, *arguendo*, that Defendants have met their burden, Plaintiff argues that Defendants' reason is mere pretext. Specifically, Plaintiff contends that Mr. Folk had racial animus which, under the Cat's Paw Theory, can be attributed to the "official" decision-maker, Mr. Adkins.

### i. *Prima Facie* Case

Under the *McDonnell Douglas* test, the first issue is whether there is a genuine dispute as to any fact material to Plaintiff's *prima facie* case of discrimination. To establish a prima facie case of discrimination, a plaintiff must show: (1) that he was a member of a protected class; (2) that he was qualified for the position; (3) that he was subject to an adverse employment action; and (4) that after he was discharged, he was replaced with a person who is not a member of the protected class or, in the case of disparate treatment, that others similarly situated were treated more favorably. *Okoye v.Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

There is clearly no genuine dispute that Plaintiff has proven the first three factors. First, Mr. Isaac was a member of two protected classes, based on his race (African-American) and color (Black). (Doc. No. 15 at 8.) Second, Plaintiff alleges that Mr. Isaac was overqualified for the Floorhand position and qualified for the HSE Advisor position. (Doc. No. 1 at 3.) Defendants deny that in their Answer but offer no substantive evidence to support that denial. (Doc. No. 13 ¶ 15.) Therefore, for summary judgment purposes, this prong should be resolved for Plaintiff. Third, for purposes of this Motion, Defendants do not dispute that Mr. Isaac was "demoted"

when he was transferred to the Floorhand position. (Doc. No. 13 at 5.) Therefore, the third prong survives summary judgment.

The Court finds that there is at least a factual dispute with respect to the fourth prong. Plaintiff has alleged that "a non-Black HSE Advisor (Jason Villasenor) was also written up but not demoted." (Doc. No. 14 at 9.) For summary judgment purposes, the admissible evidence regarding Jason Villasenor appears in Mr. Isaac's affidavit, wherein Mr. Isaac alleges, "Jason Villasenor is a White man who worked as a HSE advisor at the same time I was working at the Crosby location and the Houston Tech Center. He also reported to Dionicio Arredondo. Even though he received a write up, he was not demoted." (Doc. No. 14-5 at ¶11.) Defendants urge that Plaintiff lacks evidence showing that Mr. Villasenor was given preferential treatment under "nearly identical circumstances" as is required by the Fifth Circuit. (Doc. No. 13 at 6-7.) *See Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982) (holding that a plaintiff's burden on the fourth prong is "to establish that the misconduct for which she was discharged was nearly identical to that engaged in by a [similarly situated] employee"). Nonetheless, Defendants acknowledge that Mr. Villasenor was "an existing HSE Advisor who was reporting to Mr. Arredondo." (Doc. No. 13 at 6.) The particular circumstances surrounding Mr. Villasenor's treatment – and in particular, whether they were "nearly identical" to Mr. Isaac's circumstances – are in dispute. Plaintiff swears to an identical location ("at the Crosby location and the Houston Tech Center"), the same supervisor ("also reported to Dionicio Arredondo"), and the same predicate circumstance triggering disparate treatment ("[also] received a write up [but] was not demoted"). These assertions are enough to preclude summary judgment on the fourth prong.

For these reasons, the Court finds that Plaintiff's *prima facie* case of discrimination survives summary judgment.

6

### ii. Legitimate, Non-Discriminatory Reason

Defendants insist that they demoted Plaintiff for the legitimate, nondiscriminatory reason that he displayed poor case management as a HSE Advisor. (Doc. No. 13-4 at ¶3-4.) (in which Mike Adkins declares: "In or around August 2013, I noted that Plaintiff was not meeting overall expectations with respect to his safety and injury prevention job duties."). *See Faruki v. Parsons S.I.P. Inc.*, 123 F.3d 315, 320 (5th Cir. 1997) (noting that poor job performance is a legitimate, nondiscriminatory reason for termination). While "not meeting overall expectations" seems to be a subjective perception largely unsupported by documentary evidence, the Court is reluctant to substitute its own business judgment for the company's. Therefore, the Court finds that Defendants have articulated a facially legitimate, non-discriminatory reason for the employment action.

### iii. Pretext

The final prong in the *McDonnell Douglas* framework requires the Court to consider whether Plaintiff has presented summary judgment evidence sufficient to raise a fact issue as to whether Defendants' proffered reasons for the demotion were mere pretext for discrimination.

The Fifth Circuit has suggested that it is appropriate to consider the consistency between performance reviews and employment action when assessing whether proffered nondiscriminatory reasons for an employment action are mere pretext. *See DeRouen v. Shoneys, Inc.*, 76 F. App'x 532, 533 (5th Cir. 2003) (affirming the district court's finding of no "mere pretext" when the non-protected candidate who was promoted over the plaintiff, allegedly for nondiscriminatory reasons, had "better performance reviews"). In this case, an inference opposite of *DeRouen* applies; Plaintiff's positive performance reviews undercut Defendants' nondiscriminatory reason for the demotion.

Mr. Isaac received a "written warning" on August 6, 2013 for his failure (on August 3) to escort an injured employee to a medical clinic and to timely notify management about the incident. The warning included a Performance Evaluation chart with seven categories of review. Plaintiff received either "Average" or Good" on every metric. (Doc. No. 14-2 at 60.) ("Attention to PD Safety: Average"; "Performs Required Duties: Good"; "Works Well With Others: Good"; "Self-Motivated: Average"; "Reliable and Punctual: Good"; "Communication Skills: Average"; "Follows Directives from Supervisors: Good"). Under the section entitled "Identify Unsatisfactory Performance," there is only a description of the August 3 incident. This document conveys that Mr. Isaac was doing at least a satisfactory job (and almost half of the time, an above-average job) of handling his responsibilities. Nonetheless, at oral argument, Defendants argued that the incident on August 3 was part of a "more global performance issue" and that there was a "general impression that [Mr. Isaac] was not effectively managing the safety function on the location to which he was assigned." The Court is struck by the incongruity between the August 6 performance review and the August 22 demotion, and the confusion is only compounded by Defendants' explanation at oral argument.

The Fifth Circuit has held that "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). *See also Reeves v. Sanderson Plumbing Prod.*, *Inc.*, 530 U.S. 133, 134 (2000) ("[T]he factfinder's disbelief of the reasons put forward by the defendant, together with the elements of the prima facie case, may suffice to show intentional discrimination"); *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478 (5th Cir. 2015) (internal citations omitted) ("At the end of the day, the pretext inquiry asks whether there is

8

sufficient evidence demonstrating the falsity of the employer's explanation, taken together with the prima facie case, to allow the jury to find that discrimination was the but-for cause of the termination"). Therefore, although this discrepancy does not decide the case for Plaintiff, it raises a fact issue as to whether the proffered non-discriminatory explanation was the true reason for the demotion.

Although Plaintiff's initial showing of pretext is, under *Laxton*, *Reeves*, and *Goudeau*, potentially sufficient to survive Defendant's Motion for Summary Judgment, Mr. Isaac supplements his case with a Cat's Paw theory of discrimination, linking the racial animus of Mr. Folk to the employment action taken by Mr. Adkins. The Cat's Paw Theory holds that a subordinate employee's discriminatory remarks regarding a co-worker can be attributed to the workplace superior, ultimately the one in charge of making employment decisions, when it is shown that the subordinate influenced the superior's decision or thought process. *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004). Specifically, Plaintiff must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decisionmaker. *Id.*

For the first element, animus, Plaintiff asserts that Mr. Folk called Mr. Isaac a "lazy black ass." (Doc. 14-7 at 9.) Defendants counter that this was nothing more than a stray remark, and as such, cannot carry the pretext argument past summary judgment. But Defendants mistakenly discount the role that this comment plays in the pretext analysis. There are two different contexts in which courts evaluate so-called "stray remarks." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015). *See also Reed v. Neopost USA, Inc.*, 701 F.3d 434, 442 (5th Cir. 2012) (recognizing that "this court's application of this distinction has been somewhat messy,

9

complicating matters for district courts"). First, when remarks are being used as "direct evidence of discrimination," a demanding, four-part test first announced in *Brown v. CSC Logic, Inc.* applies. *Goudeau* at 475; *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996) (holding that "[r]emarks may serve as sufficient evidence of age discrimination if the offered comments are: 1) age related; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue."). Alternatively, in a circumstantial case such as this, where "discriminatory remarks are just one ingredient in the overall evidentiary mix," the Court considers the remarks under the "more flexible" two-part standard articulated in *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 230 (5th Cir. 2000). Under the *Russell* test, the comments need only show: (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475–76 (5th Cir. 2015). Therefore, the relevant questions at this stage are: (1) whether "lazy black ass" implies discriminatory animus and (2) whether Mr. Folk was either primarily responsible for the demotion or influenced the relevant decisionmaker.

On the animus prong, the words "lazy black ass" evince an archaic stereotypical coupling of poor work ethic with the African-American race. Mr. Folk did not say "lazy person" or even "lazy ass," either of which would have been impolite but obviously legal. The unjustifiable connection between labor-based denigration and Mr. Isaac's race cannot be ignored, and cannot be attributed to anything but racial animus – *especially* when viewed, as is required at this stage, in the light most favorable to the Plaintiff. For that reason, summary judgment is unwarranted with respect to the first prong of the *Russell* test.

For the second prong, it is undisputed that Mr. Adkins and not Mr. Folk was the official decisionmaker with regard to the demotion. Nonetheless, Plaintiff has clearly raised a fact issue as to whether Mr. Folk had "influence or leverage over" Mr. Adkins. In Mr. Arredondo's deposition, he describes the sequence of two meetings that closely preceded Mr. Isaac's demotion. (Doc. No. 14-8 at 25-32.) First, according to Mr. Arredondo, there was the ARB meeting attended by Mr. Arredondo, two other managers (Duane Cuku and Manasi Pandya), Mr. Adkins, and Mr. Isaac. *Id.* The purpose of that meeting was to review the "issues [and] behaviors" relating to the August 3 incident for which Mr. Isaac received a warning. *Id.* According to Mr. Arredondo, the "ARB had nothing to do with [Mr. Isaac's] case management or any of that. It had to do with the incident itself." *Id.* About an hour after the ARB meeting, Mr. Folk arrived and "wanted to have a meeting discussing performance issues . . . [p]rivately, without [Mr. Isaac] there." *Id.* After this post-ARB meeting, Mr. Atkins made the decision to transfer Mr. Isaac to Floorhand. *Id.* Mr. Arredondo expressly testified that, to his knowledge, Mr. Adkins did not make any demotion decision until after Mr. Folk's post-ARB meeting with the group, a meeting at which Mr. Folk insisted that Mr. Isaac not be present. *Id.* Defendants argue that Mr. Folk was not a "determinative factor" in Mr. Adkins's decision but even if that were true, it is not the standard. (Doc. No. 15 at 9.) The question is whether a reasonable juror could conclude that Mr. Folk had "influence or leverage over" Mr. Adkins and on these facts, the answer is yes. For that reason, Defendant's Motion for Summary Judgment is **DENIED** with respect to the race/color discrimination claim.

### b. Hostile Work Environment and Constructive Discharge Claim

Courts have historically grouped claims that a constructive discharge resulted from a hostile work environment into three categories: (1) when supervisor harassment "culminates in a

tangible employment action," employers are strictly liable; (2) when supervisor harassment takes place absent tangible employment action, employers may assert the so-called *Ellerth/Faragher* defense; (3) when co-worker harassment predicates the discharge, employers may assert the *Ellerth/Faragher* defense. *Ellerth/Faragher* dictates that an employer can avoid liability if it can show that: (1) it used reasonable care to prevent and correct promptly any harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998).

This case presents a unique question, slightly apart from any of the three categories listed above: when co-worker racial harassment combines with a tangible employment action, together causing a constructive discharge, can an employer assert the *Ellerth/Faragher* defense?

On one hand, employer liability for "tangible employment action" derives from agency principles. As the Supreme Court has explained, "[t]angible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998). For that reason, it would seem to follow that the discriminatory demotion alone, which almost certainly caused a constructive discharge in this case, should bar the employer from asserting the *Ellerth/Faragher* defense.

But the missing ingredient here is <u>supervisor</u> harassment. Courts have always taken care to causally link "<u>supervisor</u> harassment" with "constructive discharge" in finding that the aforementioned category (1) applies, such that *Ellerth/Faragher* is blocked. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) (emphasis added) ("No affirmative defense is available, however, when the supervisor's harassment **culminates in** a tangible employment action, such as discharge, demotion, or undesirable reassignment."); *Pennsylvania State Police v.*

*Suders*, 542 U.S. 129, 130 (2004) (emphasis added) ("This case concerns employer liability for one subset of constructive discharge claims: those **resulting from** sexual harassment, or "hostile work environment," attributable to a supervisor"); *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013) (emphasis added) ("If the supervisor's harassment **culminates in** a tangible employment action, the employer is strictly liable."). In this case, the Court finds strong evidence that a constructive discharge occurred through the demotion, which could justify preclusion of the *Ellerth/Faragher* defense if that demotion was the culmination of supervisor harassment. But the harassment predicating Mr. Isaac's hostile work environment claim came from co-workers. Plaintiff has failed to raise a genuine dispute with respect to day-to-day workplace harassment by any supervisor. *See* Doc. No. 14-3 at 40 ("I don't have a problem with [Mr. Arredondo]. . . Never had a problem with Steve Folk . . . Never had a problem with Dave Schmelzle . . .[e]xcept for the name-calling that he did to me one time . . . I didn't have a problem with [Steve Brouwer] . . . Didn't meet [Mr. Adkins] that much . . . I met Mr. Dunwar] once or twice maybe").

The Court holds that Plaintiff cannot combine co-worker harassment with tangible employment action, absent supervisor harassment, so as to bar Defendants from asserting the *Ellerth/Faragher* defense. *See also Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013) ("Under this framework, . . . it matters whether a harasser is a "supervisor" or simply a co-worker").

Under the Fifth Circuit's interpretation of the *Ellerth/Faragher* defense, an employer is entitled to summary judgment if an employee unreasonably fails to take advantage of corrective opportunities provided by his employer. *Hockman v. Westward Commun's, LLC*, 407 F.3d 317, 329 (5th Cir. 2004).

Defendants' "Harassment, Discrimination and Retaliation Policy" states, "It is important to contact your manager, Human Resources or Ethicspoint, if any of the following occurs: . . . you believe you have been subjected to conduct that may violate this policy . . . ." (Doc. No. 13-2.) (emphasis added). Mr. Isaac claims that he used Dispatch Orders to reporte all of the harassment he experienced. (Doc. No. 14 at 19.) These Orders were read by his immediate supervisor, Mr. Arredondo, and were also reviewed by two other managers. *Id. See also* Doc. No. 14-3 at 38 ("I do dispatch paper every day and it's always something that has discriminatory stuff on the paper every day"). Defendants' witnesses deny ever seeing Mr. Isaac's race-based complaints on Dispatch Orders. (Doc. No. 15 at 6.) Neither party has provided the Court with documentary evidence of any Dispatch Order.

In *Hockman v. Westward Commun's*, the employer's harassment policy contained a provision instructing employees to escalate their grievances to higher level of manager if their immediate supervisor's response was not sufficient. F.3d 317, 329 (5th Cir. 2004). The court found that the plaintiff-employee's failure to do so entitled the defendant to summary judgment. *Id*. By contrast, in *Wyatt v. Hunt Plywood Co.*, the policy contained no such escalating instruction. 297 F.3d 405, 414 (5th Cir. 2002). The *Wyatt* case involved two separate sets of harassment allegations. With the first set, plaintiff-employee rapidly reported them to her immediate supervisor, who assured her that he would handle them. When the supervisor failed to remediate the harassment, the court found that the defendant was not entitled to summary judgment because the plaintiff had reasonably taken advantage of corrective opportunities. With the second set, plaintiff-employee reported her concerns to supervisors who provided no assurance that they would be handled, and who proved to be entirely ineffective in responding to them. The court granted summary judgment to the defendant on this second group of allegations

14

because it found that the plaintiff was not reasonable in declining to pursue other corrective opportunities.

In the instant case, Defendants' policy lacks an explicit escalating instruction, although it does contain multiple reporting options (manager, Human Resources, or EthicsPoint). (Doc. No. 13-2.) Mr. Isaac seemingly never received any indication – over the course of many months – that the complaints he allegedly wrote every day in his Dispatch Orders were being read, let alone addressed. Under *Hockman* and *Wyatt*, the Court finds that it was unreasonable for him not to have pursued another option under the policy (i.e., Human Resources or EthicsPoint). Therefore, there is no genuine dispute that Defendants' *Ellerth/Faragher* defense would succeed. For that reason, Defendants' Motion for Summary Judgment is **GRANTED** with respect to the hostile work environment and constructive discharge claims.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 5th day of October, 2017.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE